Peggy A. GILLEY

v.

The TRAVELERS INSURANCE COMPANY.

Civ. A. No. 5308.

United States District Court
E. D. Tennessee, S. D.

March 25, 1969.

Strang, Fletcher, Carriger & Walker, Chattanooga, Tenn., for plaintiff.

Campbell & Campbell, Chattanooga, Tenn., for defendant.

## MEMORANDUM

FRANK W. WILSON, District Judge.

This is a lawsuit for recovery of disability benefits under an insurance policy. The defendant issued a subpoena upon one Dr. David V. MacNaughton to appear and testify in the trial. In the course of the trial the United States Attorney entered an appearance to move to quash the subpoena served upon Dr. MacNaughton. As the case was being tried before the Court sitting without a jury, the Court took the motion to quash under advisement to enable the parties to submit briefs and Dr. MacNaughton was excused for appearance at the trial pending further orders of the Court.

In the argument of the motion to quash it was represented unto the Court that Dr. MacNaughton is a psychiatrist generally engaged in the private practice of his profession in Chattanooga, Tennessee, and that upon an occasion Mrs. Gilley, the plaintiff herein, was referred to him for examination. The referral was by the Division of Vocational Rehabilitation of the Tennessee Department of Education, acting as agent for the Department of Health, Education and Welfare, Social Security Administration. Dr. MacNaughton presumably reported the results of his examination unto the Division of Vocational Rehabilitation and was paid for his professional services by that agency. Again, presumably, it is with reference to Dr. MacNaughton's knowledge of the plaintiff gained as a result of this examination that the defendant seeks now to have him

testify. It does not appear, however, whether Dr. MacNaughton made any examinations of the plaintiff other than on referral by the Division of Vocational Rehabilitation or whether he has relevant knowledge of her condition gained by any other means. The government moves to quash the subpoena on the ground that Dr. MacNaughton would be prohibited by federal law from disclosing any information obtained from his examination of the plaintiff and relies upon § 1306(a), Title 42 U.S.C. for this contention. This section provides in relevant part as follows:

"No disclosure * * * of any file, record, report or other paper, or any information, obtained at any time * * * by any officer or employee of the Department of Health, Education, and Welfare * * * in the course of discharging their respective duties under this chapter, and no disclosure of any such file, record, or other paper, or information, obtained at any time by any person * * * from any officer or employee of the Department of Health, Education, and Welfare * * * shall be made except as the Secretary of Health, Education, and Welfare * * * may by regulations prescribe. Any person who shall violate any provision of this section shall be guilty of a misdemeanor and, upon conviction thereof, shall be punished by a fine not exceeding $1,000, or by imprisonment not exceeding one year, or both."

In the absence of further stipulations by the parties as to the purpose and scope of the examination of the witness, it is apparent that a motion to quash the subpoena is not a proper method of seeking to exclude testimony under the statute herein relied upon, as a motion to quash would exclude all testimony by the witness, not just testimony relating to matters which it is contended may not be subject to disclosure under the statute.

Assuming, however, that the scope of the examination will be limited to knowledge acquired by the witness in the

course of his examination of the plaintiff on referral by the Division of Vocational Rehabilitation, the Court will consider further the contention that the doctor would be forbidden by § 1306(a), Title 42 U.S.C., from testifying with regard to his examination of the plaintiff.

■ In support of the motion to quash the government contends that Dr. MacNaughton's testimony in regard to his examination of the plaintiff would be "information" obtained by the Social Security Administration and as such could not be disclosed except upon authorization of the Secretary of Health, Education, and Welfare. In placing this construction upon the statute, the government relies upon the cases of In re Mengel, (W.D.Pa., 1962) 201 F.Supp. 687, and Hubbard v. Southern Railway Co., (M.D.Ga., 1959) 179 F.Supp. 244. Neither of these cases supports the broad interpretation here sought to be placed upon § 1306. In re Mengel involved a contempt proceeding against a social security employee who had declined to disclose the whereabouts of a husband as reflected on social security records. The Court merely held that the social security employee could not be held in contempt, in that his refusal to answer was in accord with § 1306. Incidentally, it should be noted that the employee did testify without objection as to matters of personal knowledge which he had as to the husband being alive. Hubbard v. Southern Railway Co. involved a provision in the Railroad Unemployment Insurance Act, § 362, Title 45 U.S.C., restricting the disclosure of records. There a subpoena duces tecum had been served upon the regional director of the Railroad Retirement Board seeking to obtain records of that Board for use in a Federal Employers' Liability Act case. A motion to quash the subpoena duces tecum was sustained. Neither case stands for the broad proposition here advanced by the government, that, having provided information unto the Social Security Administration, a witness can no longer testify as to such information. Not only could such a broad interpretation of the Act seriously impede the administration of justice, but no justification for it can be found in the language of the statute.

It is next contended by the government that Dr. MacNaughton, in conducting his examination of Mrs. Gilley, was acting as an "officer or employee" of the Social Security Administration and that any disclosure of his knowledge thus gained, as well as any disclosure of any report made by him to the Social Security Administration, would be forbidden by the terms of § 1306. In support of this position the government relies upon an opinion of the United States Attorney General in which he discusses the applicability of certain criminal conflict-of-interest statutes to individuals utilized by government departments as occasional consultants or advisors or as members of part time advisory boards. See 42 Op. Atty.Gen. 6, 30 Law Week. 2435 (1962). The opinion pointed out the need for detailed regulations, and approximately eight months later Congress repealed the general application of these statutes and enacted 18 U.S.C. §§ 202–205 and 207–209 in their place. In the new statutes Congress used the phrase "special government employee" and defined the term as an officer or employee "who is retained, designated, appointed, or employed * * *" for a certain number of days out of the year. Accordingly the opinion of the Attorney General with regard to conflict-of-interest statutes would carry little weight in defining the word "employee" as it is used in 42 U.S.C. § 1306(a).

The government also relies upon Gamage v. Peal, (N.D.Calif., 1962) 217 F. Supp. 384, in which the Court ruled upon the governmental immunity of a civilian psychiatrist under contract with the Air Force. The extent or nature of the contract between the psychiatrist and the Air Force does not appear from the opinion. The Court held that the contract psychiatrist was protected by governmental immunity to the same extent as were governmental medical officers. The Court noted that the contract psy-

chiatrist would be an employee of the government as defined by the Federal Tort Claims Act, 28 U.S.C. § 2671, which provides in relevant part as follows:

> " 'Employee of the government' includes officers or employees of any federal agency, members of the military or naval force of the United States, any persons acting on behalf of a federal agency in an official capacity, temporarily or permanently in the service of the United States, whether with or without compensation."

Thus it would appear that neither the opinion of the Attorney General cited by the government nor Gamage v. Peal, *supra,* would be relevant in defining the phrase "any officer or employee" as that phrase is used in § 1306(a), Title 42 U.S.C.

■ Looking to the language of the statute here involved, the gist of that language, insofar as it is relevant to the present motion to quash, is that it forbids the disclosure of any report or information obtained *by* or *from* the Secretary or any *officer or employee* of the Department of Health, Education, and Welfare. Since § 1306 seeks to limit the availability of evidence to the Court, it should be strictly construed. Cf. 58 Am.Jur., "Witnesses" § 5333; annot. 165 A.L.R. 1302. In fact, some courts have gone much further and held that such restrictions on disclosure have no application to disclosure made under legal process. As stated in the annotation just cited, at p. 1309:

> " * * * [S]everal courts, in construing statutes which in general terms prohibit the disclosure or divulgence of information by public officers and employees, have held that the inhibitions contained in the statutes relate only to voluntary imparting of such information, do not affect or govern the obtaining of such information by a court or a litigant under court process, and are not intended to impede the administration of justice in the courts by the suppression and exclusion of pertinent, relevant, and material evidence and testimony."

See also Merchant's National Bank & Trust Co. of Fargo v. United States, (D.N.D., 1966) 41 F.R.D. 266, wherein the Court held that the United States could not refuse to produce social security records otherwise subject to production under Rule 34 by relying upon § 1306, Title 42 U.S.C. The Court there stated:

> "While the statute gives the Secretary the right to restrict disclosure, 'Judicial control over the evidence in a case cannot be abdicated to the caprice of executive officers.' United States v. Reynolds, 345 U.S. 1, 73 S.Ct. 528, 97 L.Ed. 727."

■ Accordingly, the Court should give effect to a narrow definition of "officer or employee" rather than the broad definition requested by the government. A private physician engaged separately for a particular medical examination would not be considered an "employee" of the Department of Health, Education, and Welfare within any reasonable interpretation of that word. Cf. Sasnett v. Iowa State Traveling Men's Association, (8th Cir., 1937) 90 F.2d 514, 516; Aberdeen Aerie No. 24 of Fraternal Order of Eagles v. United States, (W.D. Wash., 1943) 50 F.Supp. 734, 736, 737. The Court is accordingly of the opinion that Dr. MacNaughton would not come within the provisions of 42 U.S.C. § 1306 (a) so as to prevent him from testifying as to knowledge he may have of the plaintiff by reason of his examination of her upon referral from the Division of Vocational Rehabilitation.

An order will enter accordingly.