**F.E. BUTLER, Receiver,
et al., Appellants,**

**v.**

**Sebastian DE LA CRUZ,
et al., Appellees.**

**No. 04–91–00030–CV.**

Court of Appeals of Texas,
San Antonio.

June 28, 1991.

Rehearing Denied July 30, 1991.

John W. Stayton, Jr., Patton G. Lochridge, McGinnis, Lochridge & Kilgore, Austin, H.P. Guerra, III, Pope & Guerrero, Rio Grande, for appellants.

Arnulfo Guerra, Guerra, Duvall, Ramirez & Guerra, Roma, Charles A. Nicholson, Scott Roberts, Law Offices of Pat Maloney, P.C., San Antonio, for appellees.

Before BUTTS, CHAPA and BIERY, JJ.

## OPINION

CHAPA, Justice.

Appellant, F.E. Butler, Receiver, Et Al., appeals a judgment in favor of appellee, Sebastian De La Cruz, Et Al. This is a land dispute between appellants, who are members of the Guerra family claiming title for the benefit of the Guerra family, and appellees, who are members of the De La Cruz family claiming title under the ten year statute of limitations. Based upon a verdict sustaining appellees' ten year statute of limitations claim, a judgment was entered. This appeal ensued.

The issues are:

1) whether there is legally and factually insufficient evidence to support the jury's determination that the appellees held peaceable and adverse possession of the land in controversy for a period of ten consecutive years;

2) whether the trial court committed reversible error by sustaining the appellees' hearsay objection to the testimony of Amando Pena pertaining to alleged statements against interest made by the deceased, Sebastian De La Cruz;

3) whether the trial court committed reversible error by refusing appellants' requested instruction concerning the effect of "mere grazing" on adverse possession; and,

4) whether the trial court erred in rendering judgment for appellees based on the jury findings against appellants as to issues nos. 1, 2, 3, and 4 because these findings were against the great weight and preponderance of the evidence.

■ Initially, appellants contend that the evidence is legally and factually insufficient to support the jury determination that the appellees held peaceable and adverse possession of the land in controversy for a period of ten consecutive years. Appellants, however, appear to rely primarily on their insistence that because the appellees "merely grazed" their cattle on the property in question, the appellees failed to establish their additional burden under the law of showing that they "also 'designatedly enclosed' that land by building a fence around that land [themselves]."

In considering a "no evidence" or legal sufficiency point, we consider only the evidence favorable to the decision of the trier of fact and disregard all evidence and inferences to the contrary. *Davis v. City of San Antonio*, 752 S.W.2d 518, 522 (Tex. 1988); *Garza v. Alviar*, 395 S.W.2d 821, 824 (Tex.1965). In considering a factual sufficiency point, we may not substitute our judgment for that of the jury, but must assess all the evidence and reverse for a new trial, only if the challenged finding is so against the great weight and preponderance of the evidence as to be manifestly unjust, shock the conscience, or clearly demonstrate bias. *Pool v. Ford Motor Co.*, 715 S.W.2d 629, 635 (Tex.1986); *Cain v. Bain*, 709 S.W.2d 175, 176 (Tex.1986) (great weight and preponderance); *In re King's Estate*, 150 Tex. 662, 244 S.W.2d 660, 661 (1951). Further, as several appellate courts have noted:

> In considering an "insufficient evidence" point, we must remain cognizant of the fact that it is for the jury, as the trier of fact, to judge the credibility of the witnesses, to assign the weight to be given

their testimony, and to resolve any conflicts or inconsistencies in the testimony. *Texas Employers' Ins. Ass'n v. Jackson,* 719 S.W.2d 245, 249–50 (Tex.App.—El Paso 1986, writ ref'd n.r.e.), citing *Commonwealth Lloyd's Ins. Co. v. Thomas,* 678 S.W.2d 278, 289 (Tex.App.—Fort Worth 1984, writ ref'd n.r.e.). Before reversing on the basis of factual sufficiency, however, an appellate court must detail the evidence and clearly state why the jury's finding is factually insufficient, i.e., why it shocks the conscience or clearly demonstrates bias. *Pool,* 715 S.W.2d at 635.

Under TEX.CIV.PRAC. & REM.CODE ANN. § 16.026 (Vernon 1986), appellees "were bound to prove the following elements: (1) actual possession of the land, (2) cultivation, use, or enjoyment of such land, (3) an adverse or hostile claim, and (4) an exclusive domination over the property and an appropriation of it for their own use and benefit for a period of at least ten years." *Fish v. Bannister,* 759 S.W.2d 714, 718 (Tex.App.—San Antonio 1988, no writ), citing *Ramirez v. Wood,* 577 S.W.2d 278, 287 (Tex.Civ.App.—Corpus Christi 1979, no writ). Although the supreme court has at times described the required proof as "clear and satisfactory," this is "but an admonition to exercise great caution in weighing the evidence and does not supplant the usual standard of proof by a preponderance of the evidence." *Rhodes Et Al. v. Cahill,* 802 S.W.2d 643, 645 n. 2 (Tex.1990). "[T]he question of adverse possession normally is a question of fact; only in rare instances is a court justified in holding that adverse possession has been established as a matter of law." *Id.* at 645; *Bywaters v. Gannon,* 686 S.W.2d 593, 595 (Tex.1985).

■ When the sole evidence of adverse use and enjoyment relied upon by the adverse claimant is grazing, a showing of designed enclosure by the claimant is also necessary. *McDonnold v. Weinacht,* 465 S.W.2d 136, 142 (Tex.1971). "However, active and total use of the pasture grazing capacity to the exclusion of all others, with the claimant's livestock continuously present and visible evidences the required

notice of the hostile claim" and "[u]nder these circumstances a showing of designed enclosure is not necessary." *Fish,* 759 S.W.2d at 720 (holding that constant heavy grazing, periodic harvest and sale of cedar, sale of two pipeline easements across disputed land, and the lease of disputed land for hunting was sufficient evidence of other use of grazed land to eliminate the need for proof of a designed enclosure), citing *McShan v. Pitts,* 554 S.W.2d 759, 763 (Tex. Civ.App.—San Antonio 1977, no writ); *see also McDonnold,* 465 S.W.2d at 144 (concurring opinion by Justice Pope); *Butler v. Hanson,* 455 S.W.2d 942, 945–946 (Tex. 1970) (holding that constant use for grazing on tracts which were contiguous and operated as a unit, along with evidence of modifications to an existing fence and a general reputation in the community that the property in question belonged to the claimant, was sufficient evidence of adverse possession); *Caver v. Liverman,* 143 Tex. 359, 185 S.W.2d 417, 419 (1945) (holding that the connecting of a new fence to an existing fence, together with a combination of grazing and woodcutting, is some evidence of adverse possession).

The disputed land in the present case is identified as blocks 46, 66, and 67 of the original townsite of Roma, Starr County, Texas, and those portions of adjacent lots 45 and 65 which are enclosed by a fence with blocks 66, 67 and 46. The disputed land, together with block 68 belonging to the appellees, is completely enclosed by three fences, and the Rio Grande River. The tract is bound on the west, by the Rio Grande River; on the north, by the "Mendez fence"; on the east, by the "Margo fence"; and, on the south, by the "Garcia fence".

The evidence in this record, when viewed in the light most favorable to the jury verdict, clearly shows that in addition to constant, continuous grazing, the appellees made other significant uses of the disputed tracts for at least ten years. The evidence shows that although no fence was proper along the Rio Grande River boundary, appellees built, or caused to be built, both the "Mendez" and the "Garcia" fences, and

maintained and repaired the "Margo" fence exclusively; that during this period, appellees grazed cattle and kept goats and pigs on the disputed land; that corrals, pens and a small shack or box car trailer were built or placed on the disputed land by the appellees; that the appellees at different times cultivated the land in question by the planting of corn and sorghum; that permission for hunting and fishing on the disputed land was sought from the appellees and those who entered on the land without permission were chased off by the appellees; that it was general knowledge that the land belonged to the appellees; and, that the appellees were paid $1,000.00 by Amando Pena to enter and clear parts of the disputed land for a street. We hold this is sufficient evidence to support the jury findings in favor of the appellees.

Further, remaining cognizant of the fact that we may not substitute our judgment for that of the jury, which must assess the credibility and weight of the testimony of the witnesses, we have reviewed the entire record, and cannot conclude that the challenged findings are so against the great weight and preponderance of the evidence as to be manifestly unjust, shock the conscience, or clearly demonstrate bias. *Pool,* 715 S.W.2d at 635. The points are rejected.

■ Appellants next argue that the court committed reversible error by sustaining the appellees' hearsay objection to the testimony of Amando Pena pertaining to alleged statements against interest made by the deceased, Sebastian De La Cruz. Before the trial court, appellants specifically contended that although the testimony in question was hearsay, it was admissible as an exception to the hearsay rule because the appellees were claiming "common title under Mr. De La Cruz [deceased], and as a result [appellants] [were] entitled to elicit admissions against interest by the person they [appellees] are in privity with and under whom they are claiming." Appellees' objection was sustained, and the testi-

mony was preserved by bill of exceptions. Since an appellant must properly preserve error before the trial court, by specifically notifying the court of the theory upon which the testimony is admissible, we will address the point on the only grounds properly preserved before the trial court, the common law rule based on the privity theory of vicarious admissions. *Matter of Bates,* 555 S.W.2d 420, 432 (Tex.1977).

The admissibility of evidence is within the sound discretion of the trial court, and a reversal will not lie unless a clear abuse of that discretion is shown. *Douglas v. Winkle,* 623 S.W.2d 764, 767 (Tex.App.— Texarkana 1981, no writ); 1A R. Ray, TEXAS LAW OF EVIDENCE CIVIL AND CRIMINAL § 896 (Texas Practice 3d ed. 1980 & Supp.1990). Moreover, grounds urged on appeal that were not urged before the trial court are not properly preserved, and cannot be grounds for reversal. *Douglas,* 623 S.W.2d at 768.[1]

To establish their burden of showing a clear abuse of discretion, appellants rely primarily on 1A R. Ray, TEXAS LAW OF EVIDENCE CIVIL AND CRIMINAL § 1177 (Texas Practice 3d ed. 1980) which provided, prior to the 1990 supplemental pocket part, that the privity theory of vicarious admissions "has often been applied to receive statements of a decedent against a party claiming the rights of such decedent as heir, devisee, executor or administrator."[2] However, § 1180 subsequently considerably weakened any authority in § 1177 by providing:

Criticism of the privity theories vicarious admissions is voiced in the text of the previous Section. With the adoption of the Texas Rules of Civil and Criminal Evidence *these theories should be buried for all time.* In the definition of admissions by party-opponents, these bases are conspicuously absent. Rule 801(e)(2), Tex.Rules Ev.(Civ.) and Rules Crim.Ev., is identical to the federal rule,

---

**1.** Although appellant asserts several other grounds he contends for the first time on appeal justify admission of the evidence in question, we will only address the ground properly preserved before the trial court.

**2.** Footnotes omitted.

which follows Morgan's view repudiating these fortuitous imputations....

1A R. Ray, TEXAS LAW OF EVIDENCE CIVIL AND CRIMINAL § 1180 (Texas Practice 3d ed. 1990) (emphasis added; footnote omitted).

As required by TEX.R.APP.P. 74, appellants fail to cite to, and we are unable to locate, any authority to the effect that similar rulings by a trial court are an abuse of discretion. In fact, the cases cited by the appellants were decided prior to § 1180, and uphold rulings by a trial court in view of the judge's discretion. 1A R. Ray, TEXAS LAW OF EVIDENCE CIVIL AND CRIMINAL § 1180 (Texas Practice 3d ed. 1980).

Further, even under the earlier provisions, those prior to § 1180, the "rationale of vicarious admissions" found in § 1179 of the same text, clearly admonished that "[u]nless some relation of agency is present the declarations of third persons should be received against a party only where the circumstances of their utterance furnish some guaranty of trustworthiness." 1A R. Ray, TEXAS LAW OF EVIDENCE CIVIL AND CRIMINAL § 1179 (Texas Practice 3d ed. 1980). Thus, even under the prior provisions, the trial court's discretion must be given considerable deference, considering that the trial judge was present during the testimony and could more adequately gauge the "guaranty of trustworthiness" of the "utterances" from the testimony the court heard and saw. This is significant in the instant case, considering that the bill of exceptions evidence is not sufficiently clear concerning what property Sebastian De La Cruz was referring to when the alleged utterances were made. Therefore, we hold that appellants have failed in their burden of showing that the trial court abused its discretion. The point is rejected.

■ Appellants next argue that the trial court committed reversible error by refusing appellants' requested instruction concerning the effect of "mere grazing" on adverse possession. Specifically, appellants contend that the following instruction was properly requested, improperly denied,

and that error was properly preserved: "The mere grazing of livestock on land which has been enclosed by fences built for other purposes or by other people does not constitute adverse possession." The record however, reflects that the charge read to the jury contained part of the requested instruction.

■ It is the duty "of the trial court in submitting issues to the jury: First, to submit all the controverted fact issues made by the pleadings; second, to submit each issue distinctly and separately, avoiding all intermingling; and, third, to give such explanation and definition of legal terms as shall be necessary to enable the jury to answer each issue." *Texas & Pacific Railway Co. v. Davis,* 374 S.W.2d 305, 310 (Tex.Civ.App.—El Paso 1963, writ ref'd n.r.e.); TEX.R.CIV.P. 271, 272, 273. Therefore, the determination of what explanations and definitions of legal terms are necessary to enable the jury to answer each issue is within the sound discretion of the court. Consequently, reversal will not lie because an instruction was included or refused, in the absence of a showing of a clear abuse of discretion. "In a closely contested ... case, it is error to burden the jury with excess instructions which emphasize extraneous factors to be considered in reaching a verdict," and the error is harmful when it becomes "a comment on the weight of the evidence and the case as a whole." *First Int'l Bank in San Antonio v. Roper Corp.,* 686 S.W.2d 602, 605 (Tex. 1985); *Acord v. General Motors Corp.,* 669 S.W.2d 111, 116 (Tex.1984).

■ In order to preserve error, "[a] party objecting to a charge must point out distinctly the matter to which he objects and the grounds of his objection." *Aero Energy, Inc. v. Circle C Drilling Co.,* 699 S.W.2d 821, 822 (Tex.1985), citing TEX. R.CIV.P. 274. The party making an objection to the charge must obtain a ruling from the court, but "if an objection is articulated [distinctly] and the trial court makes no change in the charge, the objection is, of necessity, overruled." *Acord,* 669 S.W.2d at 114.

The record reflects the following exchange between the appellants and the trial judge, which the appellants contend sufficiently preserves error:

APPELLANT: Your Honor, we have, in paragraph two that begins, "The use asserted," we object to the second sentence as it is phrased and what will be submitted to the Jury where it begins, "Land which has been enclosed," and believe that it should state, "before land," however, the mere grazing of livestock on land which has been enclosed, and so forth. I believe that is the correct statement of the law in the Chapa case, and we would formally submit in writing that particular instruction and definition and I have a packet which I will formally file and you can sign.

THE COURT: Let me be doing that as we go along.

APPELLANT: Okay.

THE COURT: I know what you are referring to.

APPELLANT: All right. What I would suggest would be to mark through it.

THE COURT: Put a line through it.

APPELLANT: Yes, and initial it.

APPELLEE: Which section?

APPELLANT: Second sentence of the second paragraph. And then, I think, the—over here it needs to be modified. I would check the modified as indicated above and sign it.

THE COURT: I took this out.

APPELLANT: Yes. You don't need to initial that because I agree to take that out. That's it on that page.

THE COURT: Then we get into the special issues after that.

We disagree that the record establishes that the appellants have properly preserved error. The part of the record to which the appellants direct this court, fails to clearly show a distinct objection, any ruling by the court, and that no change was made in the charge by the court. In fact, the charge finally read to the jury reflects part of the requested instruction. We hold that error has not been properly preserved.

Further, even if we could consider the error to be properly preserved, the instruction was improper in this case. Appellants went to the jury on the theory that they were entitled to judgment because the appellees failed to satisfy the adverse possession statute by solely establishing "mere grazing" on the property in question, while the appellees' contended that they were entitled to judgment because they had proved "more than mere grazing," and had satisfied the statute. Thus, whether the jury believed the appellees had proved "mere grazing" or "more than mere grazing" was critical to the verdict. Consequently, the requested instruction clearly was an "excess instruction which emphasized extraneous factors to be considered in reaching a verdict," and because it emphasized the contentions of one of the parties, it was a comment on the weight of the evidence. *First Int'l Bank in San Antonio*, 686 S.W.2d at 602. The trial court correctly denied the requested instruction. The point is rejected.

Finally, appellants argue that the trial court erred in rendering judgment to appellees based on the jury findings against appellants as to issues nos. 1, 2, 3, and 4 because the findings were against the great weight and preponderance of the evidence.

The jury answered *No* to issue no. 1, which inquired whether the appellants had established adverse possession of the property for a period of five consecutive years; answered *No* to issue no. 2, which inquired whether the appellants had established adverse possession of the property for a period of ten consecutive years; answered *No* to issue no. 3, which inquired whether the appellants had established adverse possession of the property for a period of twenty-five consecutive years; and answered *No* to issue no. 4, which inquired whether the appellants had been in possession of the property and had not abandoned it, at the time the appellees dispossessed them.

In *Sterner v. Marathon Oil Co.*, 767 S.W.2d 686 (Tex.1989), the Texas Supreme Court established a standard of review for appellants "attacking the adverse finding

to an issue upon which it had the burden of proof" and directed that "the court of appeals should [treat appellants'] point of error as if it were asserting that it had established [the issue attacked] *as a matter of law.*" *Id.* at 690 (emphasis in original). The supreme court stated:

A party attempting to overcome an adverse fact finding as a matter of law must surmount two hurdles. First, the record must be examined for evidence that supports the jury's finding, while ignoring all evidence to the contrary. Second, if there is no evidence to support the fact finder's answer, then, the entire record must be examined to see if the contrary proposition is established as a matter of law.

*Id.*

Appellants clearly had the burden of proof with regard to issues nos. 1, 2, 3, and 4. Therefore, we must follow the dictates of *Sterner* and determine whether the appellants have established "the issues attacked as a matter of law." We have reviewed the record under the appropriate standard, and find that the record supports the jury's findings. Appellants have failed in their burden; the point is rejected.

The judgment is affirmed.